# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

QUAD/TECH, INCORPORATED     :

         Plaintiff,              :

     v.                     :      CIVIL ACTION NO. 09-CV- 2561

                       :

Q.I. PRESS CONTROLS B.V.,      :      HON. EDUARDO C. ROBRENO
Q.I. PRESS CONTROLS NORTH    :
     AMERICA LTD., INC.          :
         and                  :
PRINT2FINISH, LLC            :

         :

       Defendants.         :

## PLAINTIFF, QUAD/TECH, INC.'S RESPONSES TO DEFENDANT PRINT2FINISH, LLC'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff, Quad/Tech, Inc. ("Quad/Tech") hereby responds to the First Set of Interrogatories served by defendant Print2Finish, LLC (Print2Finish") as follows:

### GENERAL OBJECTIONS

1.     Globus objects to the subject interrogatories to the extent that they seek, or may be construed to seek, any response that is immune from discovery by reason of the attorney-client privilege and/or the work product doctrine.

2.     Quad/Tech objects to defendant Print2Finish's "Definitions" to the extent that defendant seek to impose burdens and obligations on Quad/Tech in excess of those contemplated by Rules 26 and 33 of the Federal Rules of Civil Procedure and to the

extent that defendant seeks information regarding anything not at issue in this litigation.

3.      Quad/Tech objects to each of the interrogatories that include any of the terms "relates to," "relating to," and "related to." The interrogatories including any of those terms are burdensome and oppressive, and require unreasonable search and analysis.

4.      Quad/Tech objects to each interrogatory to the extent that any such interrogatory is vague, ambiguous, unduly burdensome, overly broad and/or not reasonably calculated to lead to the discovery of admissible evidence.

5.      Quad/Tech objects to any interrogatory which seeks discovery of information which is equally ascertainable to defendant as to Quad/Tech.

6.      Quad/Tech objects to any interrogatory which seeks discovery of information that can be derived by reference to documents produced by Quad/Tech, and refers defendant to such documents.

10.     Quad/Tech reserves the right seasonably to supplement its answer to any interrogatory.

## RESPONSES TO INTERROGATORIES

Without waiver of the foregoing general objections and the specific objections set forth below and subject thereto, Quad/Tech responds to Defendant's First Set of Interrogatories as follows:

2

## INTERROGATORY NO. 1

State whether You claim or assert that any of the decisions in the German Action referenced in Paragraph 29 of Plaintiff's Complaint are binding on Defendant Print2Finish and/or that Print2Finish accepted any decision rendered in the German Action, and if so, identify the decision(s) You believe are binding on and/or were acted by Print2Finish and describe the basis for such belief.

## RESPONSE TO INTERROGATORY NO. 1

Objection.  Quad/Tech objects to Interrogatory No. 1 to the extent it seeks

information protected by the attorney-client or work-product privilege or to the extent it

seeks information obtained in preparation for litigation.

Subject to these specific objections as well as the General Objections set forth

above, Quad/Tech responds as follows:

Print2Finish is bound by the decision of the German Court as agent for defendants

Q.I. Press Controls B.V. and Q.I. Press Controls North America Ltd., Inc. (collectively

"Q.I. Defendants").

## INTERROGATORY NO. 2

Identify each and every contract that You allege Print2Finish secured by means of infringement of the '577 Patent, and with respect to each such contract, state whether Plaintiff had any contracts or business relationships with any of the contracting parties at the time of the alleged infringement, and further state what, if any, efforts You undertook to secure the work that is the subject of the contracts secured by Print2Finish.

## RESPONSE TO INTERROGATORY NO. 2

Each contract that Print2Finish secured relating to the offer for sale or sale of the

Q.I. markless Register Control - mRC System is an act of patent infringement.

Quad/Tech has business relationship and/or contracts with every entity to whom

Print2Finish has sold such markless Register Control Systems.  Over the years,

3

Quad/Tech has invested significant time and efforts in calling on these customers and developing relationships with these customers.

## INTERROGATORY NO. 3

State whether You believe Print2Finish ever engaged in any conduct that infringed upon the '577 Patent, and if so, describe:

    a.    any action undertaken by Print2Finish that You allege constitutes an infringement of the '577 Patent;

    b.    the time period when the alleged infringement was occurring;

    c.    whether the alleged infringement continues to occur; and

    d.    the monetary damages allegedly sustained by You as a result of the alleged infringement.

## RESPONSE TO INTERROGATORY NO. 3

Objection.  Quad/Tech objects to Interrogatory No. 3 to the extent it seeks information protected by the attorney-client or work-product privilege or to the extent it seeks information obtained in preparation for litigation.

Subject to these specific objections as well as the General Objections set forth above, Quad/Tech responds as follows:

Any making, using, selling, or offering for sale the Q.I. markless Register Control System is an act of patent infringement by Print2Finish.  That infringement has taken place since as early as the second quarter of 2008 and continues until the present. Quad/Tech's damages include a reasonable royalty based upon the sale of the markless Register Control - mRC System as well as the profits earned from the sale of any systems sold with the markless Register Control - mRC System.

4

## INTERROGATORY NO. 4

State whether You allege that any notice allegedly given by Plaintiff to Defendants Q.I. Press Controls,
B.V. and/or Q.I. Press Controls North America, Ltd. concerning alleged infringement of the '577 Patent
constitutes notice to Print2Finish, and if so, state the basis for such belief.

## RESPONSE TO INTERROGATORY NO. 4

Notice to the QI Defendants constitutes notice in that Print2Finish as an agent for

the Q.I. Defendants.

## INTERROGATORY NO. 5

State whether You allege or believe that the mRC system infringes upon the '577 Patent when operated
in the marked mode. If yes, identify each and every claim in the '577 Patent that You believe covers
marked systems and the basis for your belief that marked registration is covered by the '577 Patent.

## RESPONSE TO INTERROGATORY NO. 5

Objection. Quad/Tech objects to Interrogatory No. 5 to the extent it seeks

information protected by the attorney-client or work-product privilege or to the extent it

seeks information obtained in preparation for litigation. Quad/Tech objects to the subject

Request as overly broad in that it goes to issues beyond the pending preliminary

injunction motion.

Subject to these specific objections as well as the General Objections set forth

above, Quad/Tech responds as follows:

Based upon the intrinsic record, as well as the understanding of those of ordinary

skill in the art, none of the claims of the '577 Patent are limited to products which operate

in markless mode. For the purposes of the preliminary injunction hearing, Quad/Tech is

only asserting Claim 29 of the '577 Patent.

## INTERROGATORY NO. 6

Identify what, if any, research You conducted or performed with respect to the mRC system prior to filing the Complaint, including:

    a.    the name of each and every Person that conducted research or testing of the mRC system;

    b.    the time period when the testing was conducted;

    c.    the nature of the testing; and

    d.    the results of such testing.

## RESPONSE TO INTERROGATORY NO. 6

Objection.  Quad/Tech objects to Interrogatory No. 6 on the grounds that it is overly broad.  Quad/Tech further objects to Interrogatory No. 6 to the extent it seeks information protected by the attorney-client or work-product privilege or to the extent it seeks information obtained in preparation for litigation.  Quad/Tech further objects to Interrogatory No. 6 to the extent that it seeks proprietary and confidential information.

Subject to these specific objections as well as the General Objections set forth above, Quad/Tech responds as follows:

All publically available information regarding the Q.I. mRC markless Register Control system was carefully reviewed by individuals from Quad/Tech including Jason Pauls, Jeff Sainio and John Seymour.  In addition, Quad/Tech's outside counsel also reviewed such materials.  This review took place between February 2008 and the filing of the instant complaint.  Lastly, Jeff Sainio attend proceedings and reviewed materials regarding the operation of the mRC markless Register Control system submitted by Q.I.

during the German litigation.

## INTERROGATORY NO. 7

Identify and Describe any and all monetary damages sustained by Plaintiff as a result of any alleged infringement by Print2Finish of the '577 Patent.

## RESPONSE TO INTERROGATORY NO. 7

Quad/Tech objects to the subject interrogatory to the extent it seeks information beyond that relevant to the pending preliminary injunction motion. Quad/Tech further objects to the subject interrogatory to the extent it seeks information which will be provided through the production of expert testimony and reports in accordance with Rule 26 and the Court's scheduling order.

Subject to these specific objections, and the general objections set forth above, Quad/Tech responds as follows:

Quad/Tech has suffered damages not to be less than a reasonable royalty based upon the selling price of the markless Register Control - mRC System. Quad/Tech is also entitled to the lost profits relating to the sales of all products and systems, as well as service contracts for all products, the sale of which, was related to the sales of the markless Register Control - mRC System. Quad/Tech is further entitled to all advertising injuries including, but not limited to, all lost profits, unjust enrichment damages and corrective advertising costs.

## INTERROGATORY NO. 8

Identify any and all alleged statements made by Print2Finish that You claim or allege are false or misleading with respect to the capabilities of the mRC system as alleged in Paragraph 36 of the

7

Complaint, including the name of the Person(s) who allegedly made such statements, to whom such statements allegedly were made, when they allegedly were made, how the statements were false or misleading, and how You were damages by those statements.

## RESPONSE TO INTERROGATORY NO. 8

Objection.  Quad/Tech objects to Interrogatory No. 8 on the grounds that it is overly broad in that it is not relevant to the issues relating to plaintiff's motion for preliminary injunction.

## INTERROGATORY NO. 9

State whether You allege that anyone employed by Print2Finish has ever made a defamatory or disparaging Communication regarding Your capability to develop new or novel products and/or the capability or performance of one of Your products.  If yes, state the name of the Person(s) who made any such Communication, to whom the Communication(s) was made, the date of each such Communication(s), whether Your relationship (current or prospective) with the recipient of any such Communication(s) was harmed and the specific monetary damages You sustained as a result of any such Communication(s).

## RESPONSE TO INTERROGATORY NO. 9

Objection.  Quad/Tech objects to Interrogatory No. 9 on the grounds that it is overly broad in that it is not relevant to the issues relating to plaintiff's motion for preliminary injunction.

## INTERROGATORY NO. 10

Identify any and all witnesses whom you expect to call as an expert witness in this matter, including the preliminary injunction hearing.  With respect to each such expert witness, that expert is instructed to answer questions 11(a), 11(b) and 11(c), or alternatively, provide a report containing the answers to these questions.  The answer or report shall be signed by the expert witness:

    a.    state the subject matter on which the expert is expected to testify;

    b.    state the substance of the facts and opinions to which the expert is expected to testify; and

    c.    provide a summary of the grounds for each such opinion.

8

## RESPONSE TO INTERROGATORY NO. 10

Objection.  Quad/Tech objects to Interrogatory No. 10 on the grounds that it is unduly burdensome and premature.  not reasonably calculated to lead to the discovery of admissible evidence.

Subject to these specific objections as well as the General Objections set forth above, Quad/Tech responds as follows:

Quad/Tech may offer expert testimony of Professor John Lieninger of Clemson University.  Quad/Tech will produce a Rule 26 expert report from Professor Leininger in accordance with the schedule to be agreed upon by the parties.

Respectfully submitted,

October 26, 2009

Frederick A. Tecce, Esquire
MCSHEA\TECCE, P.C.
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, PA 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Quad/Tech, Incorporated

9

## CERTIFICATE OF SERVICE

This is to I hereby certify that on this _____ day of October, 2009, I caused a true

and correct copy of foregoing Responses to First Set of Interrogatories Addressed to

Plaintiff, to be served, *via electronic mail,* upon the following:

Michael N. Onufrak, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Suite 1800
Philadelphia, PA 19103

Counsel for defendant Print2Finish, LLC

Frederick A. Tecce, Esquire

# EXHIBIT 2

**From:** Langfitt, David
**Sent:** Friday, November 06, 2009 10:07 AM
**To:** Michael N. Onufrak (onufrakm@whiteandwilliams.com); Michael O. Kassak (kassakm@whiteandwilliams.com); Frederick A. Tecce
**Subject:** qipc/quad scheduling order.DOC

Gentlemen:  It's time to sign this and send it to the Court.  Can you agree to the terms?  It seems like we already have.  As to the protective order, I will send Fred a revised para. seven and try to work out all issues today.  David

David D. Langfitt
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
215-772-7411 - Tel.
215-731-3850 - Fax

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure, forwarding or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

QUAD/TECH, INC.,                   :

               Plaintiff,          :

      v.                       :   Civil Action No. 09-CV-2561

                               :
Q.I. PRESS CONTROLS, B.V.,       :  Honorable Eduardo C. Robreno
Q.I. PRESS CONTROLS NORTH AMERICA,  :
LTD., IND, AND PRINT2FINISH, LLC,    :

            Defendants     :

### STIPULATED SCHEDULING ORDER

AND NOW, this    day of      , 2009, it is hereby ORDERED and DECREED that the parties shall abide by the following schedule:

1.    All parties agree to serve initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure and answers and objections to all outstanding interrogatories and document requests on or before October 30, 2009. The parties agree to produce responsive documents soon thereafter, including responsive confidential documents after the entry of a protective order.

2.    Quad/Tech agrees to produce for depositions in Philadelphia, PA all identified preliminary injunction witnesses, including Leinginger, Seymour, Sainio and Freeman during the week of November 16, 2009.

3.    Defendants will produce for depositions in Philadelphia their witnesses for the preliminary injunction hearing (Macko, van Holten, Ferron and an expert) during the week of November 30, 2009.

4.    Quad/Tech shall comply with Federal Rule of Civil Procedure 26(a)(2) on or before November 4, 2009 by producing its expert report and his curriculum vitae.

5.    If the defendants intend to call an expert witness at the preliminary injunction hearing, the defendants shall comply with Federal Rule of Civil Procedure 26(a)(2) two weeks after plaintiff produces its expert report.

6.    The Court will hold a preliminary injunction hearing on December 17 and 18, 2009.

7.    The parties agree that only issues pertinent to the preliminary injunction hearing will be the issues raised by the Motion for Preliminary Injunction.  The parties shall not be precluded from taking general discovery from each other after the preliminary injunction hearing.

It is so Stipulated.

McSHEA/TECCE

BY:_____
    Frederick Tecce
    Mc/Shea/Tecee, P.C.
    The Bell Atlantic Tower – 28th Floor
    1717 Arch Street
    Philadelphia, PA  19103
    (215) 599-0800
    Attorneys for Plaintiff Quad/Tech, Inc.

MONTGOMERY McCRACKEN,
  WALKER & RHOADS, LLP
BY:_____
    David D. Langfitt
    Montgomery, McCracken, Walker &
    Rhoads, LLP
    123 South Broad Street
    Philadelphia, PA 19109
    (215) 772-1500
    Attorneys for Q.I. Press Control
    Defendants

WHITE AND WILLIAMS LLP
BY:_____
    Michael N. Onufrak
    1650 Market Street
    One Liberty Place, Suite 1800
    Philadelphia, PA 19103-7395
    (215) 864-7174
    Attorneys for Print2Finish, LLC

It is so Ordered:

BY THE COURT:

_____
Honorable Eduardo C. Robreno
United States District Judge

# EXHIBIT 3

**From:** Langfitt, David
**Sent:** Friday, October 30, 2009 5:16 PM
**To:** Frederick A. Tecce
**Cc:** Onufrak, Michael; Michael O. Kassak (kassakm@whiteandwilliams.com)
**Subject:** written responses to discovery requests

Fred:

As contemplated by the proposed (but not yet signed) Scheduling Order, attached are QIPC B.V.'s written responses to discovery.  The originals are being sent to your office by hand delivery, along with bates numbered documents QIPCBV 0000001-182, which are not confidential or subject to the proposed protective order.

David

David D. Langfitt
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
215-772-7411 - Tel.
215-731-3850 - Fax

Confidentiality Notice: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure, forwarding or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

# EXHIBIT 4 (Part 1)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

QUAD/TECH, INCORPORATED     :
                               :
        Plaintiff,              :
                               :
   v.                             :
                               :     CIVIL ACTION NO. 09-CV- 2561
                               :
Q.I. PRESS CONTROLS B.V.,      :     HON. EDUARDO C. ROBRENO
Q.I. PRESS CONTROLS NORTH    :
   AMERICA LTD., INC.         :
          and                 :
PRINT2FINISH, LLC           :
                               :
      Defendants.            :

**PLAINTIFF QUAD/TECH, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS AND
AND THINGS DIRECTED TO DEFENDANT Q.I. PRESS CONTROLS B.V.**

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure and an agreement of

counsel, plaintiff Quad/Tech, Incorporated ("Quad/Tech"), requests defendant Q.I. Press

Controls B.V. ("Q.I.B.V.") to produce for inspection, copying and testing, the documents

and things set forth below that are in defendant's possession, custody and/or control, at

the offices of McShea\Tecce, P.C., The Bell Atlantic Tower, 28th Floor, 1717 Arch Street,

Philadelphia, Pennsylvania on or before September 4, 2009.

<u>DEFINITIONS</u>

    1.     "Quad/Tech" shall mean Quad/Tech, Incorporated, and its agents, officers,

employees, representatives and attorneys and any predecessor or successor companies,

corporation or business entities representatives and attorneys, including all persons acting

on its behalf.

2.     "Q.I.B.V." shall mean Q.I. Press Controls B.V. and its agents, officers,

employees, representatives and attorneys and any predecessor or successor companies,

corporation or business entities; "Q.I.B.V." shall also include any subsidiary, division,

company, corporation or other business entity affiliated therewith or owned by it in whole

or in part, including but not limited to, Q.I. Press Controls North America Ltd, Inc., or

which owns or controls or is owned or controlled by it in whole or in part, and the

directors, officers, agents, employees and attorneys of any of them, including all persons

acting or purporting to act on behalf of, or who are subject to the direction or control of,

any of the foregoing.

3.     The "'577 Patent" shall mean United States Patent No. 5,412,577 issued

May 2, 1995 to Jeffrey Sianio, *et. al* and entitled *Color Registration System For a

Printing Press*.

4.     "Registration Control System" shall mean any product, system, method or

device, and related service contract, made, used or sold which has any of the features, or

is in any way capable of performing the functions, identified on the attached sales

brochure and Q.I.B.V. press releases (Exhibit A), including, but not limited to, the

product marketed by Q.I.B.V. under the name "mRC (markless Register Control)" and

any substantially equivalent products with the exception of Q.I.B.V.'s Intelligent Register

System ("IRS") unless specifically called for in a particular Request.

5.     "Person" or "persons" refer to any and all individuals and entities,

including without limitation individuals, representative persons, associates, companies,

corporations, partnerships, limited partnerships, joint ventures, trusts, estates, public agencies, departments, divisions, bureaus and boards.

6.    "Relate to" (or a form thereof) shall mean referencing, constituting, reflecting, supporting, contradicting, referring to, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, regarding or relevant to.

7.    "Communication" shall mean any exchange, transmission or receipt (whether as listener, addressee, person called or otherwise) of information, whether such exchange, transmission or receipt be oral, written or otherwise, and includes, without limitation, any meeting, conversation, telephone call, letter, telegram, exchange, transmission or receipt of any document of any kind whatsoever.

8.    "Document" means any e-mail, electronic transmission, text, SMS text, handwritten, printed, typed, recorded, photographic, computer generated, or other graphic matter of any kind or nature, however produced or reproduced, including, but not limited to, books, ledgers, notebooks, letters, faxes, telexes, correspondence, telegrams, contracts, agreements notes, memoranda, analyses, reports, projections, charts, graphs, drawings, photographs, videotapes, movies, audiotapes, checks, statements, statements of accounts, inter-office and intra-office communications, offers, notes of conversations, notes of meetings, notes of telephone calls, bulletins, computer programs, computer printouts, teletypes, invoices, work sheets, work papers, diaries, calendars, minutes, reports of investigations, office manuals, and any other communications fixed in a tangible medium, including but not limited to material stored electronically or electromagnetically as well

as all mechanical and electronic sound records, or transcripts thereof, from which information can be obtained, as defined by the Federal Rules of Evidence, Rule 1001(1) and (2); "document"shall also include all drafts, alterations, modifications, changes, and amendments of any of the foregoing; "documents" shall also include any and all things subject to discovery pursuant to Rule 34(a) of the Federal Rules of Civil Procedure; "document" shall also include all "documents" (as defined herein) now in the possession, custody or control of the defendant, jointly or severally, or in the possession, custody or control of the present or former counsel, agents, employees or others acting on behalf of the defendant, jointly and/or severally, and shall also include all "documents" (as defined herein) known by the defendant, jointly and/or severally, to exist, whether or not ever in the possession of the defendant, jointly or severally; "document" shall also include all copies of all documents by whatever means made.

Any document bearing on any sheet or side thereof, any marks, including without limitation, initials, stamped indicia, comments or notations of any character which are not part of the original text, or any reproduction thereof, is to be considered a separate document.

9.     As used herein, the conjunctions "and" and "or" shall be interpreted conjunctively or disjunctively, as appropriate, so as not to exclude any documents or information otherwise within the scope of these requests.

10.     "Date" shall mean the exact day, month and year if ascertainable, or, if not, the best approximation thereof in relation to other events.

11.    The terms "identify," "describe," "state," "set forth," or similar instructions or terms shall mean to describe and state fully with all relevant details by reference to underlying facts, rather than merely by reference to ultimate facts, conclusions or generalities (as to the time, place or manner unless the context clearly indicates otherwise).

12.    The term business "entity" means a partnership, corporation, proprietorship, professional limited liability corporations, association, subsidiary, division or any other business organization, whether formal or informal.

13.    The masculine includes the feminine and vice versa; the singular includes the plural and vice versa.

14.    As used herein, the term "control" or "controlled" means the power or ability of the defendant, jointly and/or severally, to direct the actions, management, or policies of any person, firm or corporation.

15.    All accounting terms, legal terms, engineering terms and other technical terms associated with a particular industry, profession or identifiable body of knowledge shall have the meanings customarily and ordinarily associated with those terms within that industry, profession or discipline.

## INSTRUCTIONS

1.    Every reference to a business corporation, a non-profit corporation, an authority or other entity, shall also include all shareholders, directors, officers, managers, employees, servants, representatives, agents and/or other persons associated or affiliated with such entity.

2.      Each document is to be produced along with all drafts thereof in its entirety, without abbreviation or redaction.

3.      In the event that any document called for by the Requests is to be withheld on the basis of a claim of privilege or work product protection, that document shall be identified by stating (i) each addressor and addressee, (ii) any indicator or blind copy; (iii) the document's date, subject matter, number of pages and attachments or appendices; (iv) all persons to whom the document was distributed, shown or explained; (v) its present custodian; and (vi) the nature of the privilege being claimed.

4.      In the event that any document called for by these Requests has been lost, destroyed or discarded, that document is to be identified by stating: (i) any addressor and addressee; (ii) any indicated or blind copies (iii) the document's date, subject matter, number of pages and attachments or appendices; (iv) all persons to whom the document was distributed, shown or explained; (v) the date of loss, destruction or discard, manner of destruction or discard, and reason for destruction or discard; (vi) the persons who were authorized to carry out such destruction or discard; and (vii) whether any copies of the document presently exist and if so, the name of the custodian of each copy.

5.      These Requests shall be deemed continuing so as to require further and supplemental production in accordance with the Federal Rules of Civil Procedure.

## DOCUMENTS TO BE PRODUCED

### REQUEST NO. 1.

All documents, including, but not limited to, e-mails, and things that refer to, relate to, or comment upon each Registration Control System made, used, offered for sale or

sold by Q.I.B.V., including, but not limited to all specification sheets, as well as all specifications, description of functionality, current or most recent source code relating solely to color registration control features, technical manuals, use instructions, videotapes, and data sheets.

**REQUEST NO. 2.**

An mRC system having the functionality as described in Exhibit A and as sold in the United States since January 2008, including, without limitation, any ancillary equipment that permits the mRC system (as sold) to be utilized in operation, including, but not limited to, any RAS systems.

**REQUEST NO. 3.**

Each document that refers to, relates to, or comments upon the advertising, marketing, distribution, sale, offer for sale, use, maintenance, labeling, product inserts, and instruction manuals relating to each Registration Control System made, used, owned, offered for sale, or sold by Q.I.B.V., including, but not limited to catalogs, price lists, sales contracts, bulletins, memoranda, press, trade releases, invoices, product specification sheets, purchase orders, receipts, promotional literature or brochures.

**REQUEST NO. 4.**

All documents, including but not limited to, all e-mails, that refer to, relate to, or comment upon the '577 Patent or any related foreign or U.S. counterpart patent or patent application.

**REQUEST NO. 5.**

Each document that refers to, relates to, or comments upon Quad/Tech or its parent corporation Quad/Graphics, Incorporated.

**REQUEST NO. 6.**

All documents referring to, relating to or commenting upon any oral or written communications, including, but not limited to, sales communications, offers for sales and sales, between Q.I.B.V. and any third party concerning any Registration Control System, including, but not limited to, Q.I.B.V.'s mRC Colour Register System, IRS, ABD, mRC Cut-Off Register, IDS, IQM, GOS, the present litigation, the '577 Patent or the subject matter thereof and related service contracts.

**REQUEST NO. 7.**

All documents referring to, relating to or commenting upon market studies, market projections, competitive analysis, market share analysis, or surveys, in any way related to any Registration Control System, including, but not limited to, Q.I.B.V.'s mRC Colour Register System, IRS, ABD, mRC Cut-Off Register, IDS, IQM, GOS as well as Quad/Tech's Register Control Products as well as those of any other competitor.

**REQUEST NO. 8.**

All documents referring to, relating to, or commenting upon the finances, financial stability, liquidity and overall financial condition of Q.I.B.V. or from which that information may be determined, including, but not limited to, tax returns, balance sheets, income statements, profit and loss statements and cash flow information.

## REQUEST NO. 9.

For each person Q.I.B.V. intends to use as a fact or an expert witness in this case, including at any preliminary injunction hearing, all publications, articles, books or papers authored, co-authored, edited or otherwise generated by such person, all materials or things authored, co-authored, edited or otherwise generated by or on behalf of such person, and which refer or relate to any opinions or testimony of any such person rendered or to be in this case, all transcripts, including all exhibits thereto, of any trial or deposition testimony of such person in any prior litigation, all materials reviewed or consulted by or on behalf of such person as a part of any participation in this case, all graphs, charts, models, exhibits, drawings or physical, upon which such person has relied or upon which any such person intends to rely in deposition, at trial or otherwise in this case, all materials upon which any opinions or testimony of such person in this case are based, all documents or things provided to such person, or any agent of such person, by Q.I.B.V. or any agent of Q.I.B.V. (including Q.I.B.V.'s counsel), in connection with this

case, and all resumes, *curricula vitae* or other documents listing the education, experience or training of such person.

Respectfully submitted,

Frederick A. Tecce, Esquire
MCSHEA\TECCE, P.C.
The Bell Atlantic Tower - 28th Floor
1717 Arch Street
Philadelphia, PA 19103
(215) 599-0800
(215) 599-0888 (Fax)
ftecce@mcshea-tecce.com

Counsel for plaintiff,
Quad/Tech, Incorporated

# EXHIBIT A

email : Webview

INSIDE THE NEWSPAPER INDUSTRY FOR N&T INSIDERS.

June 1, 2009

# DATELINE NEWSPAPERS & TECHNOLOGY



FORWARD TO A FRIEND

SIGN-UP FOR NEWSLETTER

**CURRENT HEADLINES**

-- Tribune launches 'super blog'
-- NAA: Ad sales drop almost 30% in Q1
-- Free Lance-Star picks QIPC for register, color control
-- Lee reporting ink savings with Kodak app
-- New Zealand news agency picks DTI
-- Finnish daily buys KBA Cortina
-- Hyperlocal news site to expand
-- Goss' Sutis to retire
-- WAN: World newspaper circ up
-- Shaw concludes Roxen rollout
-- New search tool for e-editions
-- Inergize adds SMS to Web CMS
--AP intros upgrade of MNN iPhone app
-- FKI Logistex bought by Cincy firm
-- Cox sells 2 Texas papers
-- Gannett consolidating edit in La.
-- Boston.com increases hyperlocal reach

**ABOUT NEWS&TECH**
Newspapers &
Technology is the
premier international
monthly trade publication
for newspaper publishers
and department managers
involved in applying and
integrating technology

**SPONSORS**
GammTech



**INDUSTRY**

**Roy Yokouchi**, who
served as president of
Mitsubishi Heavy
Industries' U.S. press
operations, retired, the
company said.

PPI Media US Inc.
named **Gary
Schwartzkopf** its senior

AD



Expertly Rebuilt
Stackers and
Trimmers
• Like-new machines
• One-year parts warranty

GAMMTECH
CORPORATION
for more information click here

## Tribune launches 'super blog'

Tribune Co. last week unveiled a Chicago-based blog aggregation site as
it attempts to lure more readers to its online offerings.
The beta version of ChicagoNow features blogs from more than 30 local
personalities and subject matter experts.
By year-end it hopes to increase that number to more than 80.
In a video introducing the project, the Tribune said ChicagoNow can be
described as a site where "The Huffington Post meets Facebook for
Chicago."
The Tribune has been working on developing the site since late last year.
The new site will offer a slate of advertising options, and it will also be
home to the Chicago Tribune's relaunched RedEye Web site.

sales consultant. Prior to joining ppi, Schwartzkopf was strategic account manager for Southern Lithoplate and also spent more than eight years at Agfa where he was district sales manager.

Pitman Co. named **Anthony P. Crupi Sr.** chief executive officer.

Canto released Cumulus 8, the latest upgrade of its digital asset management app.

Taiwanese e-paper display module manufacturer Prime View International acquired E Ink Corp. for $215 million. PVI, which in 2005 acquired the e-paper business of Philips Electronics, had previously partnered with E Ink to provide displays underpinning e-readers including the Sony Reader, the Amazon Kindle 2 and the forthcoming Kindle DX.

The production facility formerly used to produce **The Patriot-Ledger** in Quincy, Mass., is being torn down to make way for a big-box retail store, the paper reported. The Patriot-Ledger closed the plant in 2007 and transferred production to The Boston Globe.

Three Finnish regional

---

*News & Tech* will have more information about Tribune's plans in the July issue.

■

## NAA: Ad sales drop almost 30% in Q1

Print ad sales for the first quarter of 2009 fell almost 30 percent, the worst drop in modern history.

According to the Newspaper Association of America, newspapers posted $5.9 billion in print ad revenues, down 29.7 percent from the year-ago quarter. Online sales, meantime, fell 13.4 percent, to $696 million. Taken together, newspapers sold a total of $6.6 billion in overall advertising, a decrease of 28 percent.

In 2008, newspapers sold more than $9.2 billion in print and online advertising during the first three months of the year.

As expected, classified ad revenues continued their swift decline, falling during the first three months of 2009 by 42 percent, to $1.4 billion.

By segment, automotive classifieds fell 43 percent, to $322 million; and real estate fell 45 percent to $336 million. Recruitment classifieds declined a whopping 67 percent, to $205 million.

■



Looking for the missing piece?
# You just found it.
**MASTHEAD** INTERNATIONAL, INC

## Free Lance-Star picks QIPC
for register, color control

The Free Lance-Star in Fredericksburg, Va., said it would equip its new press with automatic register and cutoff control systems from Q.I. Press Controls.

QIPC will install its mRC registration system on the newspaper's Goss International Corp. FPS press, which is slated to go into production next year.

The triplewide FPS press is configured with four towers and two folders. Eight cameras on the towers will monitor color register while 18 additional mRC cameras will sit on the folders to control cutoff.

The Free Lance-Star is the third newspaper to buy the mRC system, following The Atlanta Journal-Constitution and Transcontinental Inc., which is using it in its soon-to-be-opened Fremont, Calif., facility.

■

Lee reporting ink savings with Kodak app

daily newspapers, Karjalainen, Keskisuomalainen and Savon Sanomat, completed redesigns and newsroom workflow reorganizations, tapping Anygraaf's All Media Publishing apps to aid in the processes, the vendor said.

Swedish newspaper printer Mittmedia AB expects an ROI of fewer than three years on the LithoSpray 88 spray dampening and filtration equipment it installed from Baldwin Technology Co., according to the vendor. Baldwin installed the equipment on an 11-unit, four-high tower at the printer's facility in Ornskoldsvik in December.

Amazon's Kindle DX electronic reader will begin shipping to customers June 10, the vendor said, at a pre-order price of $489. The Kindle DX, Amazon's net-gen reading device, has a 9.7-inch e-paper display, built-in PDF reader with auto-rotate capabilities and enough storage for up to 3,500 books.

Lee Enterprises is reporting ink savings of 20 percent to 25 percent since implementing Kodak's Ink Optimizing Service software at 12 of its daily newspapers, Kodak said.

Kodak's Ink Optimizing Service, which Lee first tested at the Billings (Mont.) Gazette, provides customers with an ICC DeviceLink profile that plugs into Kodak's Prinergy workflow app.

Based on the that profile, separated image files go through a gray component replacement process that reduces ink usage by replacing CMY inks with less-expensive black ink, while limiting the Total Area Coverage to a predefined level.

"Ink savings have met our expectations and we also see enhancements to the quality of photos," said Brian Kardell, vice president of production and chief information officer at Lee.

In addition to the Gazette, Lee rolled out the service to the Casper (Wyo.) Star-Tribune; the Rapid City (S.D.) Journal; the Bismarck (N.D.) Tribune; the Sioux City (Iowa) Journal; the Times in Munster, Ind.; the Times News in Twin Falls, Idaho; the St. Louis Post-Dispatch; the Missoulian in Missoula, Mont.; the Quad City Times in Davenport, Iowa; the Pantagraph in Bloomington, Ill.; and the North County Times in Escondido, Calif.

New Zealand news agency picks DTI

The New Zealand Press Association purchased Digital Technology International's ContentPublisher software, DTI said, marking the vendor's first customer sale in New Zealand.

ContentPublisher will allow NZPA to automate news editing and delivery processes to its news and image Web sites and commercial customers, and will provide NZPA with a single multimedia app to exploit the Internet for developing new products and expanding its multimedia news operations.

"Our 24/7 integrated newsroom requires comprehensive, easy-to-use tools to deliver multimedia content and wire feeds -- including breaking news, weather, sports, financial information and entertainment -- to a demanding audience, fast," said Simon Randall, NZPA's manager of commercial services. "It will also enable us to create new products and services."

NZPA publishes information every 24 hours from its news staff, overseas wire services and other sources including the New Zealand Stock Exchange.



Britton Services Inc.

Audit · Rebuild · Repair
Full Service Installation & Removal
Optical Press Realignment
Maintenance Contracts





**THE CLASSIFIEDS LIST**

AD

Chicago area weekly newspaper publisher **Rich Masterson** and National Newspaper Association executive director **Brian Steffens** join News & Tech columnist Doug Page in The Press Room, part of the News & Tech Radio Network. The show runs 60 minutes, and was recorded on April 29, 2009.



Finnish daily buys KBA Cortina

Finnish publisher Keski-Pohjanmaan Kirjapaino purchased a waterless Cortina press from Koenig & Bauer AG.
The 4-by-1 machine, to go into production next year, will be configured as four towers and two folders and sport a 22-inch cutoff. It's capable of printing 150,000 32-page, full-color tabloids per hour. The machine will also be equipped with KBA's PlateTronic automatic plate changers, RollerTronic automatic roller locks and NipTronic bearers.
Copies can be stitched, glued, perforated or scored after the quarterfold, KBA said.
KBA said the press is the 17th Cortina it's sold since introducing the waterless machine in 2002.

Hyperlocal news site to expand

City search Web site HelloMetro.com said it is expanding its HyperLocal news operation to more than 1,100 Web sites in the United States and Canada.
Louisville, Ky.-based HelloMetro said three online newspapers launched last week, in Louisville; Nashville, Tenn.; and Seattle. Each paper contains articles from local HelloMetro reporters. The information will be compiled into PDF newspapers and available to readers, HelloMetro said.
Ultimately, the company said it expects to produce 1,100 PDF newspapers each day.

Goss' Sutis to retire

Goss International Corp. President Richard Sutis will retire July 31, the company said. Sutis, who has worked for Goss and its predecessor companies for 44 years, will retain his positions as vice chairman of the board of directors of Shanghai Goss Graphic Systems and will also retain his seat on the board of Goss Graphics Systems Japan Corp.

WAN: World newspaper circ up

Despite the global financial crisis, newspaper circulation grew 1.3 percent worldwide in 2008, according to statistics compiled by the World Association of Newspapers.

WAN said global newspaper circulation is close to 540 million. When free dailies are added, circulation in 2008 rose at an even faster pace, by 1.62 percent.

Regionally, newspaper circulation grew almost 7 percent in Africa; 2 percent in South America and almost 3 percent in Asia. Circ fell almost 4 percent in North America, 2.5 percent in Australia and 1.8 percent in Europe.

"The simple fact is that, as a global industry, our printed audience continues to grow," said Gavin O'Reilly, WAN president and CEO of Independent News and Media.

Predicting the death of newspapers "seems to have reached the level of a new sport," he said.

"That this doom and gloom about our industry has largely gone unanswered is, to me, the most bizarre case of willful self-mutilation ever in the annals of industry," he said. "And it continues apace, with commentators failing to look beyond their simple rhetoric and merely joining the chorus that the future is online, online, online, almost to the exclusion of everything else. This is a mistake. This oversimplifies a rather complex issue."

---

Shaw concludes Roxen rollout

Shaw Newspapers concluded its deployment of Roxen Internet Software's editorial software.

The Midwestern newspaper publisher has moved more than 40 newspapers and 20 Web sites to Web-based Roxen Editorial Portal since June 2008, Roxen said.

"We knew that moving to a Web-based platform would be faster and smoother, but we couldn't imagine we'd be finished with all our publications by now," said Tom Shaw, chief executive officer, Shaw Newspapers. "

Shaw is Roxen's first U.S. newspaper customer.

---

New search tool for e-editions

U.K. software developer PageSuite said it's beefed up its software with the ability to allow users to search for stories and advertisements within e-editions.

According to the vendor, readers can use the tool to search text for keywords and phrases in much the same way they search for stories on companion Web sites.

In addition to its U.K. clients, which include Express Newspapers, PageSuite has a number of U.S. clients, including The Examiner newspapers in Washington and San Francisco, Shaw Suburban Media and Stars & Stripes.

In the U.K., PageSuite powers the e-editions of all Johnston Press, Newsquest and Archant newspapers and some Trinity Mirror titles.

---

Inergize adds SMS to Web CMS

Newspaper software vendor Inergize Digital added SMS text support to its Web Content Management System software.
Papers, including those published by Inergize client E.W. Scripps, can use SMS to send breaking news, weather alerts and other information to mobile devices. The software also supports mobile marketing and advertising through the Common Short Code messaging protocol.

■

## AP intros upgrade of MNN iPhone app

One year after the software's introduction, The Associated Press rolled out an upgraded version of its Mobile News Network Apple iPhone app, offering users several new features aimed at letting them customize content.
Version 2.0 includes a front-page feature that enables users to choose what news categories they want to see and lets them select region-specific news. The app also provides beefed-up weather forecasts.
AP also increased content slotted for health and science, and added industry-related press releases.

■

## FKI Logistex bought by Cincy firm

FKI Logistex, which has supplied material handling systems to a number of U.S. newspapers including The Courier-Journal in Louisville, Ky., agreed to be purchased by Cincinnati-based Intelligrated, the firms said last week.
No financial terms were disclosed.
Under terms of the definitive agreement, Intelligrated will acquire the FKI Logistex operations in North and South America from Melrose plc, a U.K.-based investment group.
The company said it will continue to support Alvey palletizers and other products now in operation.

■

## Cox sells 2 Texas papers

Cox Newspapers sold two Texas papers, The Lufkin Daily News and The Daily Sentinel in Nacogdoches, to privately held Southern Newspapers.
No financial details were disclosed.Southern publishes a number of Texas dailies, including the Galveston County Daily News and the New Braunfels Herald-Zeitung.
Cox last year put the majority of its newspapers on the sale block, saying it would retain ownership of only three papers, the Atlanta Journal-Constitution, Palm Beach (Fla.) Post and Dayton (Ohio) Daily News.

■

## Gannett consolidating edit in La.

Gannett Co. Inc. is consolidating headline writing, copy-editing and pagination of five Louisiana newspapers at The News-Star in Monroe,

La., beginning July 13.

According to Leslie Hurst, vice president of Gannett's South group, the Monroe hub will initially serve the News-Star, the Advertiser in Lafayette and the Daily World in Opelousas. The Times in Shreveport and the Town Talk in Alexandria will be moved to the centralized operation in September.

All of the papers, as well as other publications and special sections produced at each site, will be served by the new Content Production Center, Hurst said in a memo issued last week.

## Boston.com increases hyperlocal reach

Boston.com expanded its hyperlocal community program Your Town to six more Massachusetts communities, Hingham, Malden, Medford, Melrose, Norwell and Scituate.

Each Your Town site provides town news and information and gives readers access to local resources and Web sites. Each site also includes event listings, as well as community, school, recreation, civic and local business information.



Newspapers & Technology
1623 Blake St., Ste 250 | Denver, CO 80202 | 303-575-9595

This email was sent to randy.freeman@quadtechworld.com. To ensure that you continue receiving our emails, please add us to your address book or safe list.

manage your preferences | opt out using TrueRemove®.

Got this as a forward? Sign up to receive our future emails.

powered by

emma











MENU

NEWS > NEWS REPORTS > Official statement to QuadTech press release

# NEWS

SUCCESS STORIES
NEWS REPORTS
RECENT INSTALLATIONS
TRADE FAIRS
ARCHIVE

Malaysia
- One hundred systems sold in India by Q.I. Press Controls
- Q.I. Press Controls launches new animated website
- Management lost with Q.I. Press Controls IMRC
- Official statement QuadTech press release
- Transcontinental invests in total solution

Hans Jansen, chairman Q.I. Press Controls indicates: "Of course it is a setback for us not to be able to provide our latest innovation to the fullest on the German market and to deprive this market to benefit from the advantages the system offers in markless mode. However it also indicates that we are the first to offer a functional markless register system and at this moment there is no other supplier capable of offering the same."

About Q.I. Press Controls:
Q.I. Press Controls is the global leader in the supply of innovative and revolutionary closed loop control equipment for all types of web offset printing presses. They offer a total markless solution for full automated press control with ten offices worldwide and global agencies. Q.I. Press Controls guarantees a fast and personal customer service. Q.I. Press Controls, your partner for success. For more information visit www.qipc.com

HOME   |   SWITCH LANGUAGE   |   SITE MAP

Q.I. PRESS CONTROLS





up to 35 inches and it will print up to 80,000 copies per hour. In order to fully automatically control both colour and cut-off register on this extensive FPS press, we will install our mRC solution" states Gerry Ferron, Managing Director of Q.I. Press Controls North America "We are very proud to be able to say we are the first supplier of such control systems on a GOSS FPS press in the US market," he continues. "It took quite some time and joined efforts, involving Print2Finish, our agent for the US, Q.I. Press Controls North America and our Headquarters in The Netherlands, until this deal came about. But by visiting several reference sites, that gave proof of the innovative character of our intelligent solutions and the results achieved, we could convince them that mRC is the way of the future. Following Atlanta Journal Constitution and Transcontinental, Free Lance-Star will be our third mRC site in the US. The installation of the press will start this summer and is expected to be operational early in 2010."

*About Q.I. Press Controls:*

Q.I. Press Controls offers innovative solutions for full automatic press control; from colour density, colour and cut-off register to automatic fan-out





MENU

THE PRODUCTS > MAGAZINE PRINTING > mRC COLOUR REGISTER

# mRC COLOUR REGISTER
# AUTOMATIC CONTROL

MAXIMUM REDUCTION IN WASTE WITH HIGH SPEED CAMERAS IN FRONT OF THE DRYING UNIT

By using colour register Control, mRC has verified once more that Q.I. Press Controls is the specialist in the field of "closed loop" colour register systems for web offset presses. The mRC camera is the quickest in the world, and can be positioned in front of the drying unit without any form of web stability whatsoever. This creates a very short response time making major waste reduction possible.

Running the mRC markless™ is a completely new option. By analysing the TIFF data, the system is able to have reference point from the image. Based on this data the system can regulate the cut-off and lateral register.

*mRC markless is not available in Germany, Japan, UK and USA.*

▶ Download the brochure (PDF)
▶ View the product animation

Q.I. PRESS
CONTROLS

HOME  |  SWITCH LANGUAGE  |  SITE MAP



I AM... PROUD

Q.I. Press Controls offers innovative solutions for full automated markless press control: from colour density, colour and cut-off register to automatic fan-out compensation.

Q.I. Press Controls is proud to be part of the MANRoland project for hybrid presses at the Transcontinental printing sites in San-Francisco (US) and Anjou (Canada).

MAN COLORMAN XXL San Fransisco USA

Q.I. PRESS CONTROLS
www.qipc.com

April 2009   17

Newspapers & Technology

# MARKLESS REGISTER CONTROL

The mRC markless Register Control is a fully automatic colour and cut-off register system for web offset presses. A digital camera with an integrated microprocessor ensures that the measured data is processed in real-time. The camera can use both the printed image and printed micro marks as its reference. When run in "markless" mode, the mRC uses the TIFF data as its reference.



## Applications:
- Colour register in circumferential direction from printing unit to printing unit (unit to unit)
- Colour register of all colours in all directions relative to each other (colour to colour)
- Side laying the entire web using the web guide system (ink guide).
- Cut-off register.
- Side laying a web section using a turner bar.
- Correcting the lateral growth of the web downstream of the printing units compared to the web upstream of the printing units (fan-out).

## What are the unique features?
- The mRC can work both with and without marks.
- On-line measurements on a free running web.
- Camera and data processing combined into one small component.
- Innovative optical technology using LED lighting.
- Easy to clean optics thanks to removable glass (IMS).
- VPN connection for remote diagnostics.
- Option of a motorised scanner for lateral pre-adjustment.
- 3 functions in 1 scanner: colour register, cut-off register and sidelay register.
- Easy to operate by means of a touch screen.

## What are the advantages of the mRC?
- Less labour intensive thanks to automatic control.
- Greater net printing surface now that register marks are no longer necessary.
- Less waste because the different colours are automatically brought into register while starting up.
- Consistent quality, independent of job, printing company or press.
- Reliability due to quality, simplicity and intelligent software.
- Easy operation using a 19" touch screen
- Easy to expand with intelligent Quality Management for quality reporting.

## Options:
- Air purge - a unique construction blows air across the lens to reduce cleaning to a minimum.
- Anti-embossing - the printing units are controlled such that the build-up on the blankets is reduced and the wash frequency can be minimised.
- Automatic waste gate control if an error is greater than a preset value.
- Progressive control predicts and corrects for errors due to speed change before they occur.
- Front to back control ensures that the front of the printed web is brought into register with the back of the printed web.
- Compensator or phaser control, a compensator roller between the printing units is driven to enable large errors to be compensated quickly.
- Fan-out control, several mRC cameras measure the growth behaviour of the web to enable errors to be automatically compensated.
- Motorisation package for the circumferential and side-lay registers.

## Specifications

### Image recognition (markless):

| | | |
|---|---|---|
| Original: | Digital RIP data 1-Bit TIFF or TIFF/ G4 files | |
| Colours: | CMYK | |
| Max. colour register error: | ± 7.0 mm | |
| Max. cut-off register error: | ± 100 mm | |
| Max. side-lay register error: | ± 25 mm | |

### Register marks:

| | tiny | small |
|---|---|---|
| ID: | square | square |
| Shape: | | |
| Mark size: | | |
| Min.: | 0.1 x 0.1 mm | 0.3 x 0.3 mm |
| Max.: | 0.3 x 0.3 mm | 0.6 x 0.6 mm |
| Clearance: | 5 x 5 mm | 7 x 7 mm |
| Max. colours: | 6 | 6 |

### Range:

| | | |
|---|---|---|
| Min. side-lay: | ± 1.5 mm | ± 1.5 mm |
| Min. circumferential: | ± 1.5 mm | ± 1.5 mm |
| Max. side-lay: | ± 2.5 mm | 5.0 mm |
| Max. circumferential: | ± 3.0 mm | 7.0 mm |

### Camera:

| | |
|---|---|
| Type: | CCD matrix |
| Maximum number of measurements: | 40 per second |
| Light source: | LED |
| Lateral reading range: | 25 mm |
| Focus depth: | ± 14 mm |
| Max. web speed: | 18 m/s |
| Minimum mark density: | 0.6 D |

### Accuracy:

| | |
|---|---|
| Colour register: | ± 0.01 mm |
| Cut-off register / sidelay register: | ± 0.1 mm |

### Operation: 19" touch screen

### Temperature:

| | |
|---|---|
| During operation: | 5° C to 40° C |
| In storage: | -25° C to +60° C |

### Impacts: < 70 g

### Vibrations: < 7 g (11 - 200 Hz)

### Certification: CE / UL / FCC

Specifications may change without further notice.

   

Product overview | mRC | IDS | IQM | ABD

Introduction | Technology | Summary | USP | FAQ

# markless Register Control

## Technology

The mRC (markless Register Control) digital camera with integrated microprocessor incorporates the latest CCD technology. As the printing press starts up, mRC locates the reference points in the image defined during pre-press work. If reference marks have been used, the camera will find them. After the press has started, the mRC camera immediately measures the differences between the actual and target positions of the image or the reference marks. These measurements are quickly converted into instructions to the control processors to correct any differences from the reference image. This means auto-make ready in just a few seconds.




**Het mRC is geschikt voor:**

- Colour register in circumferential direction from printing unit to printing unit (unit to unit).
- Colour register of all colours in all directions relative to each other (colour to colour).
- Side laying the entire web using the web guide system (ink guide).
- Cut-off register.
- Side laying a web section using a turner bar
- Correcting the lateral growth of the web downstream of the printing units compared to the web upstream of the printing units (fan-out).

Aside from the standard functionalities, Q.I. Press Controls offers a range of options aimed at reducing waste and achieving greater efficiency.

- Air purge - a unique construction blows air across the lens to reduce cleaning to a minimum.
- Anti-embossing - all printing units are controlled such that ink build-up on the blankets is reduced and the wash frequency can be minimised.
- Automatic waste gate control if an error is greater than a preset value.
- Progressive control predicts and corrects for errors due to speed change before they occur.
- Front to back control ensures that the front of the printed web is brought into register with the back of the printed web.
- Compensator or phasor control: a compensator roller between the printing units is driven to enable large errors to be compensated quickly.
- Fan-out control: several mRC cameras measure the growth behaviour of the web to enable errors to be automatically compensated.
- Motorisation package for the circumferential and side-lay registers.

## CERTIFICATE OF SERVICE

This is to I hereby certify that on this 7th day of August, 2009, I caused a true and correct copy of foregoing Plaintiff Quad/Tech, Inc.'s First Set of Requests For Production of Documents and Things Directed to Defendant Q.I. Press Controls B.V. to be served *via* hand-delivery, upon the following:

Michael N. Onufrak, Esquire
WHITE AND WILLIAMS LLP
1800 One Liberty Place
Suite 1800
Philadelphia, PA 19103

Counsel for defendant Print2Finish, LLC

David D. Langfitt, Esq.
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

Attorney for defendants
Q.I. Press Controls B.V. and
Q.I. Press Controls North America Ltd, Inc.

Frederick A. Tecce, Esquire